# Appendix 1

## Sanctions and Consent Orders Entered Against Wells Fargo

    **(a)**     **April 13, 2011 - Wells Fargo's consent order with the OCC.**

On March 31, 2011, Wells Fargo entered into a Consent Order with the Office of the Comptroller of Currency ("OCC"). *See* https://www.occ.gov/news-issuances/news-releases/2011/nr-occ-2011-47k.pdf. The order primarily addressed Wells Fargo's robo-signing of affidavits and notarizations, and foreclosing on borrowers without the holding the proper chain of title. *See id.* at Art. I(2). Amongst other things, Wells Fargo was ordered to comply with bankruptcy law. *See id.* at Arts. III(3)(d); VI(1)( e) and (q); V(1) and (1)(c) and (j); and VII(3)(a) and (b).

    **(b)**     **April 4, 2012 – The National Mortgage Settlement**

On April 4, 2012, the Court in *U.S. v. Bank of America, et al.*, entered a consent order with Wells Fargo as part of the "Mortgage Servicing Settlement" entered into by five big banks, the attorney general, and most of the States.[1] The Mortgage Servicing Settlement requires Wells Fargo to take numerous actions with respect to bankruptcy servicing, including the following: (1) adopting new procedures regarding the preparation and execution of proofs of claim, affidavits, and declarations filed in bankruptcy cases in order to ensure such documents are accurate and properly executed; (2) provide borrowers with certain documents and information, including payment histories, monthly mortgage statements, etc.; (3) take prompt action to remediate inaccuracies in borrowers' account information; (4) apply borrowers' post-petition payments accurately to pre-petition arrearage amounts and post-petition payment amounts; (5) ensure that proofs of claim and motions for relief from stay filed in debtors' bankruptcy cases are properly

---

[1] The original servicers were Ally Financial, Inc., Bank of America Corp., Citigroup, Inc., J.P.Morgan Chase & Co. and Wells Fargo & Co. *See*, https://www.justice.gov/sites/default/files/crt/legacy/2012/04/11/scra_wellsfargo_settle.pdf

documented; (6) conduct quarterly reviews of documents filed in judicial foreclosure and bankruptcy proceedings to ensure compliance with the settlement; (7) take appropriate steps to oversee third-party service providers, ensure that documents prepared by third parties comply with the document requirements in the agreement, and conduct appropriate quality assurance reviews of third-party service providers; and (8) timely file appropriate notices regarding post-petition fees and charges, timely file replies to notices of plan payment completion, and, if such notices are not timely filed, agree not to collect such fees and charges from the borrower.

      **(c)**      **June 16, 2015 - Wells Fargo's amended consent order with the OCC.**

The OCC found that Wells Fargo failed to comply with Articles II, III, IV, VIII and IX of the April 13, 2011 Consent Order, that Wells Fargo "is in continuing noncompliance with and in violation of the Consent Order, and continues to engage in unsafe and unsound practices." *See* Art. I(1) and (2). https://www.occ.gov/static/enforcement-actions/ea2015-067.pdf. The OCC placed severe restrictions on Wells Fargo's ability to obtain servicing rights, among other restrictions. *Id.* at p. 2.

      **(d)**      **November 19, 2015 - Wells Fargo's settlement with the United States Trustee regarding Rule 3002.1 payment change notices ("PCN"). $81.6 million.**

On November 19, 2015, Wells Fargo entered into a settlement with the United States Trustee ("UST") in the case of *In re Green*, Case No. 11-33377, pending in the United States Bankruptcy Court for the District of Maryland, Greenbelt Division, Docket No. 54. *See* https://www.justice.gov/opa/file/794841/download. The settlement agreement was implemented by order of the bankruptcy court.

In the settlement agreement, the UST found that Wells Fargo failed to timely file notice of payment changes ("PCN") or failed to file PCNs at all. Wells Fargo confirmed systemic issues with the filing of PCNs, as well as systemic issues related to the preparation of annual escrow

analyses for borrowers in bankruptcy cases, and the proper application of escrow shortage payments.[2] *Id.* at p. 1. In the agreement, Wells Fargo states that "Wells Fargo has implemented, or will implement, a number of operational enhancements to ensure that all PCNs filed in Bankruptcy Cases going forward are Properly Filed PCNs." *Id.* at Art. V(12). "Properly Filed PCNs" is defined as:

> "Properly Filed PCN" shall mean a PCN that is: (1) timely filed with the bankruptcy court that provides the borrower with the correct payment change amount and the correct date that the new payment change will go into effect; and (2) ***otherwise accurate and in compliance with the requirements of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.***

*Id.* at Art. II (emphasis added).

The November 19, 2015 settlement with the UST required Wells Fargo to credit accounts of debtors in bankruptcy and provide refunds of approximately $81.6 million. *Id.* at Art. VI and Ex. A thereto. It required Wells Fargo to make numerous operational enhancements by November 30, 2015, including training, certifications, monitoring and a control process through random selections by a quality assurance and compliance team. It also required the preparation of reports "showing all future changes in the monthly payment amount for customers in bankruptcy, and reviews of the populations identified in those reports," with such reports going to senior management in bankruptcy and mortgage servicing. *See id.* at Art. V. The settlement set up expansive duties for an independent reviewer with reporting duties. *See id.* at Art. VII.

The Independent Reviewer was supposed to assess, among many other aspects of the settlement agreement, whether, subsequent to March 31, 2015, Wells Fargo "has filed Properly

---

[2] For the time period between December 1, 2011, and March 31, 2015, Wells Fargo identified 84,480 active accounts for which a Payment Change Notice ("PCN") was or should have been filed. Of the 84,480 active accounts, there were 54,837 for which Wells Fargo filed an untimely PCN or missed filing a PCN altogether. Of the 54,837 active accounts, 42,756 accounts had an increase in the payments associated with the untimely filed or missed PCN. *Id.* at Art. III(3). Wells Fargo also described its failures with respect to debtors' escrow accounts. *Id.* at Art. IV.

Filed PCNs in Bankruptcy Cases involving loan modifications." *Id.* at Art. VII, ¶ 45.k.(b). The Independent Reviewer released two reports on Wells Fargo's progress in complying with the agreement, one in August 2016 and another in May 2017.

**(e)    May 24, 2016 - Wells Fargo's amended consent order with the OCC – $70 million fine regarding Rule 3002.1 payment change notices (PCN).**

On May 24, 2016, Wells Fargo entered into an amended consent order whereby the OCC terminated the 2011 Consent Oder and the 2013 and 2015 Amended Consent Orders, thereby lifting the servicing restrictions of the 2015 Consent Order. However, the OCC required Wells Fargo to pay a $70,000,000.00 civil money penalty for the violations of bankruptcy law (PCNs and escrow accounts) detailed by the UST in the November 19, 2015 settlement in *Green*.[3]

Thus, at this point Wells Fargo had been fined/ incurred damages of ***$155 million*** for its violation of law with respect to bankruptcy payment change notices. Fed. R. Bankr. P. 3002.1(b).

**(f)    September 8, 2016 - Wells Fargo's settlement with the CFPB, OCC and City of Los Angeles - $185,000,000.** [4]

On September 8, 2016, Wells Fargo entered into a $100 million settlement with the Consumer Financial Protection Bureau ("CFPB") because it had (1) opened unauthorized deposit accounts for existing customers and transferred funds to those accounts from their owners' other accounts, all without their customers' knowledge or consent; (2) submitted applications for credit cards in consumers' names using consumers' information without their knowledge or consent; (3) enrolled consumers in online banking services that they did not request; and (4) ordered and

---

[3] The OCC found that Wells Fargo's untimely and missed PCN filing practices on which the UST settlement was based did not comply with Bankruptcy Rules, required Wells Fargo to undertake operational enhancements to achieve compliance, and were unsafe and unsound practices. The OCC also found that between March 2013 and October 2014, Wells Fargo made escrow calculation errors in 76,720 accounts due to an error in a proprietary loan decisioning software tool, that the errors led to escrow overages in 29% of the loan population and escrow shortages in 67% of the loan population, and also led to approximately 184 incorrect loan modification denials.

[4] This settlement did not involve bankruptcy law.

activated debit cards using consumers' information without their knowledge or consent. Wells Fargo took these actions to hit sales targets and receive bonuses. Wells Fargo also agreed to pay $35 million to the OCC and $50 million to the Los Angeles city attorney.

Although Wells Fargo had fired 5,300 employees and blamed them for the fraudulent actions, public outcry led to Senate hearings, the ouster of John Stumpf, the clawback of more than $60 million in compensation from Mr. Stumpf and Carrie Tolstedt. Stacy Cowley, *Wells Fargo's Reaction to Scandal Fails to Satisfy Angry Lawmakers*, N.Y. Times, Sept. 29, 2016, https://www.nytimes.com/2016/09/30/business/dealbook/wells-fargo-ceo-john-stumpf-house-hearing.html. Wells Fargo has also entered into a $142 million settlement with account holders. *See Jabbari v. Farmer*, No. 18-16213, No. 18-16236, No. 18-12684, No. 18-12685, No. 18-16315, No. 18-16317, 2020 WL 4048683 (9th Cir. July 20, 2020)(overruling objections to approval of class action settlement).

**(g)     November 18, 2016 - New restrictions on Wells Fargo by OCC.**

After the abrupt resignation of Mr. Stumpf and the firing of some senior management employees in connection with the fraudulent account scandal, the OCC issued a statement on November 18, 2016 revoking relief granted to Wells Fargo from certain regulatory requirements, particularly with respect to Wells Fargo's ability to change its directors and senior executive officers and offering golden parachute payments.

**(h)     Unauthorized loan modifications in Chapter 13 bankruptcies**

In 2016, Wells Fargo began filing PCNs notices in debtors' Chapter 13 bankruptcies that placed debtors in trial loan modification payment plans, without the approval of the debtors, the debtors' bankruptcy counsel, the Chapter 13 Trustees, or the bankruptcy court. Judge Beyer of the United States Bankruptcy Court for the Western District of North Carolina stated that Wells

Fargo's actions go "beyond the pale of due process." *In re Allen*, Case No. 13-31034, Order Sustaining Objection to Notice of Mortgage Payment Change, Docket No. 29 (Bankr. W.D. N.C. Sept. 19, 2016). *See also In re Roman*, Case No. 15-31462, Order Sustaining Objection to Notice of Mortgage Payment Change, Awarding Fees and Expenses to Debtor's Counsel to be Paid by Wells Fargo, and Setting Compliance Hearing for October 25, 2016, Docket No. 34 (Bankr. W.D. N.C. Oct. 14, 2016); *In re Eyer,* Case No. 12-70985, Memorandum Order Striking Notice of Payment Change, Docket No. 93 (Bankr. W.D. Penn. Dec. 30, 2015)( bankruptcy court entered an order striking a similar notice of mortgage payment change because the notice had "nothing to do with the [d]ebtor's current obligations under its note and/or mortgage with Wells Fargo.").

**(i)      $1 billion settlement with the CFPB and OCC**

In April 2018, Wells Fargo entered into an agreement with the CFPB and OCC to pay a total of $1 billion to settle investigations into Wells Fargo's mortgage and auto lending practices. Specifically, with respect to mortgage lending, Wells Fargo forced customers to pay for extending the length of an interest rate lock on mortgage applications, even when the bank was responsible for delays in the application process. The CFPB and OCC also alleged that Wells Fargo forced customers to purchase unnecessary insurance policies when purchasing vehicles with loans from Wells Fargo. *See*, https://www.nytimes.com/2018/04/20/business/wells-fargo-cfpb-penalty-regulators.html.